## ILLEGAL CONTRACT FOR DIVISION OF ATTORNEY'S FEES.

Circuit Court of Cuyahoga County.

LOUIS B. WHITNEY v. HARRISON W. EWING, ADMINISTRATOR OF
THE ESTATE OF HARRISON J. EWING, DECEASED.

Decided, December 24, 1903.

*Contract—A Party to an Illegal Contract Can Not Invoke Aid of Court
to Secure a Division of Profits.*

A plaintiff who has knowledge of, and is party to, an agreement be-
tween an attorney and a client by which it is agreed that the at-
torney shall have one-half of all the money he succeeds in obtain-
ing from the husband of the client as alimony or otherwise, is
party to an illegal contract, working a fraud upon the court, and
can not invoke the aid of the court to recover from the attorney
one-half of the sum obtained in the transaction and which the at-
torney had agreed to divide with plaintiff for recommending him
to the client as an attorney.

*W. C. Ong,* for plaintiff in error.
*Harrison Ewing,* contra.

MARVIN, J.; WINCH, J., and HALE, J., concur.

The plaintiff here was the plaintiff below, and brought suit against Harrison J. Ewing, then in full life but since deceased, seeking to recover upon a contract entered into between said parties and which, as set out in the petition, is as follows:

"Plaintiff went to the office of the defendant, Harrison J. Ewing, then a practicing attorney, and said to him that a woman by the name of Hornsby was in his (Whitney's) office and desired the service of an attorney and had directed and authorized this plaintiff to select for her some one to act as her counsel and attorney for her, in order to recover alimony or maintenance and support from her husband. This plaintiff then and there said to said defendant, Harrison J. Ewing, that he (plaintiff) would recommend the appointment of Harrison J. Ewing if he (Ewing) should give to the plaintiff a fair proportion of whatever he (Ewing) should receive for fees or compensation finally in said case and growing out of said appointment, whereupon the defendant said to this plaintiff that if he (the plaintiff) should recommend him (the defendant, Harrison J. Ewing) as counsel in the case he would give to the plaintiff one-half of all the fees and compensation received for such service."

He then sets out that he did recommend the said Ewing to the said Mrs. Hornsby as a suitable person for her to employ as an attorney, and then introduced Mrs. Hornsby to the said Ewing; that he, the said Ewing, took the case for Mrs. Hornsby, and received as fees for his services the sum of $3,000, no part of which has been paid to the plaintiff, though he has demanded from the said Ewing the payment of $1,500—one-half of the fee so received by Ewing.

Upon the conclusion of the evidence introduced upon the trial by the plaintiff the court, on motion, directed the jury to return a verdict for the defendant, which was done, and judgment entered for him. On the part of the plaintiff it is urged that in so granting said motion the court erred. This brings us to a consideration of the evidence in the case.

Upon the trial it appeared that Mrs. Ormsby went to the office of the plaintiff, who was a private detective, on the 9th day of August, 1897, and complained to him that her husband was neglecting her, failing and refusing to provide for her and was in other respects violating his obligations as a husband, and

sought plaintiff's advice, and he said to her that he was not an attorney and that it would be necessary to have an attorney in order to obtain her rights. She said to him that she was without money and that whatever compensation was received by anybody in helping her would have to come out of whatever was recovered from her husband, who had a considerable amount of money. Whitney went to the office of Ewing, told him of the situation of the woman and agreed with him that he would bring her, if he could, to Ewing's office, and that Ewing should pay him one-half of whatever he (Ewing) should receive as compensation for his services. Ewing then went with Whitney to the latter's office and was introduced to Mrs. Hornsby. She stated her case to him, and he thereupon entered into a written contract with her by which it was agreed between them that Ewing should receive one-half of whatever he recovered from her husband for her. He filed a petition asking for alimony. Service was had upon Hornsby, who was the next day arrested at the instance of Ewing upon a charge of stealing a ring from his wife, and while so under arrest Ewing made some arrangement with Hornsby by which he was to file an answer in the alimony suit, which was prepared by Ewing and signed by Hornsby and filed. As a result of the transaction and within about two months of the time when the suit was brought Hornsby paid to Ewing in settlement of this suit the sum of $6,000, one-half of which Ewing paid to Mrs. Hornsby and retained the other one-half, $3,000, in pursuance of his contract with her. He never paid Whitney anything.

That the contract made by Ewing with Mrs. Hornsby was absolutely void is conceded by plaintiff's counsel, as it must be by any reputable lawyer.

It was against public policy. It was calculated to impose upon the court to whom the appeal for alimony was to be made. It was a contract out of which Ewing had no right to profit and by which, if appeal had been made to any court, he would not have permitted to profit. If the plaintiff was a participant with Ewing in perpetrating this imposition upon Mrs. Hornsby, and in aiding in perpetrating this imposition upon the court, he is not entitled to profit by it, and no court should aid him to profit

by it. This is practically conceded by counsel for the plaintiff. But it is urged that Whitney is entirely innocent in the matter; that he knew Ewing would be entitled to compensation for his services, and that it would be proper that he should receive something for introducing a client to him and aiding him in procuring evidence upon which the suit might be won, for, though no claim is made in the petition for any compensation for any other services than the introduction of the parties to each other and the recommendation of Ewing to Mrs. Hornsby, still the evidence shows that the plaintiff did aid in obtaining evidence. He sent a detective to disreputable places in this city for the purpose of obtaining such evidence. Whatever may be thought of rendering such aid, this case is determined upon the plaintiff's participation in the fraudulent contract made by Ewing with Mrs. Hornsby.

In the plaintiff's own testimony, in speaking about his first conversation with Ewing on the matter, he says:

"I said to him that I had said to her that she needed an attorney, after talking with her, and I had come up to see if he would take hold of the case and would take hold of the case with me."

Again, he says:

"He said to me, 'If you will take me down and introduce her we will take hold of this case together and whatever we get out of it for fees we will divide between us.'"

And again:

"He stated that he would take hold of this case with me, and that I was to look up and get proof where he had been around to different places where Hornsby had been, the different places here, and get proof to him, and we would take hold of this case together and we would pay ourselves out of whatever money was got from Hornsby for her, alimony or otherwise."

Again, in speaking of this conversation he had between Ewing, Mrs. Hornsby and himself, this question was put to him by his own counsel: "What, if anything, was said about who was to collect the money and what was to be done with it, that is, the

money he received; who was to collect it?" To this he answered, "Mr. Ewing." Then followed the question, "State what was to be done with what was collected." He answered: "To give to Mrs. Hornsby one-half of it, and the remaining one-half to be divided between Mr. Ewing and myself." That this was said at the first conversation had between the three together appears from the question and answer immediately following. The question is: "Well, then, what occurred? Where did they go, if they went anywhere, out of your office?" (Answer) "Went into Mr. Ewing's office." It appears that earlier in this same conversation Ewing had said that he would prepare a written contract between himself and Mrs. Hornsby, and that in the afternoon of the same day he reported to the plaintiff that such a contract had been executed. This seems to settle beyond any question that the plaintiff had full knowledge at the time that it was made of the contract between Ewing and Mrs. Hornsby, and that this contract with Ewing was dependent upon that. It follows that his contract with Ewing was tainted with the same fraud as was Ewing's contract with Mrs. Hornsby.

It is urged here, however, that the action of the court resulted in permitting Ewing to hold and enjoy all the fruits of his own wrongdoing. This is true, so far as this case is concerned. When the courts shall be appealed to by the person or persons from whom Ewing fraudulently obtained this money, it can be determined whether any one shall be entitled to enjoy the fruits of such a fraud. It is said that so far neither Mr. Hornsby nor Mrs. Hornsby have made any complaint of the conduct of Ewing, but this is no reason why the court should give its aid to any wrongdoer to profit out of this despicable transaction. To permit a recovery here would be for the court to lend its affirmative aid to a wrongdoer in obtaining profit from his own unlawful act. This can not be done. It is true that Ewing has no right to this money, but he has not asked for the intervention of the court, nor is the judgment entered by the court below any affirmance of any rights in Ewing to this money. It is only a denial of any rights in the plaintiff. The reasoning which would justify a judgment in favor of the plaintiff here would apply with equal force if there had been a contract pure

and simple to obtain money from Hornsby by blackmail and divide the money so obtained between Ewing and the plaintiff, and if such money had been obtained by blackmail and paid into the hands of Ewing and the plaintiff had brought suit to recover a portion of it. The trial court had no opportunity in this case to give the money to the party to whom it rightfully belongs, but was only called upon to say whether, as it did not rightfully belong to either Ewing or the plaintiff, the plaintiff having aided in unlawfully getting it into the hands of Ewing, should have a part of it paid to him.

It seems clear that the judgment of the court of common pleas was right, and it is affirmed.